IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MERRILL LYNCH, PIERCE, FENNER & SMITH INC. | : : : | |
| | : | MISCELLANEOUS |
| v. | : : | NO. 11-260 |
| JAMES A. MILNES | : | |

**SURRICK, J.**                                                                                     **APRIL  8  , 2014**

### MEMORANDUM

Presently before the Court is Petitioner Merrill Lynch, Pierce, Fenner & Smith Inc.'s Petition to Confirm Arbitration Award and for Entry of Final Judgment (ECF No. 1) and Respondent James A. Milnes's Cross Motion to Vacate Application/Petition (ECF No. 4).  For the following reasons, the Petition to Confirm Arbitration Award and for Entry of Final Judgment will be granted, and the Cross Motion will be denied.

**I.      BACKGROUND**

Petitioner is a national securities brokerage firm and a member firm of the Financial Industry Regulatory Authority ("FINRA").  (Pet. ¶ 1, ECF No. 1; Cross Mot. 2, ECF No. 4.) Respondent was employed as a financial advisor in Petitioner's Philadelphia office from December 2002 to September 2008.  (Pet. ¶ 2; Cross Mot. 1.)  At the start of his employment with Petitioner, Respondent received a $600,000 loan from Petitioner in return for which he signed a promissory note.  (Pet. ¶ 5.)  The terms of the loan required Respondent to repay the principal, together with interest at the rate of 4.75 percent per year.  (*Id*. at ¶ 6 & Ex. A.)  In addition, the promissory note provided that Respondent was responsible for Petitioner's reasonable attorneys' fees in the event that legal proceedings were required for collection of any outstanding balances.  (*Id*. at ¶ 7 & Ex. A.)  On September 15, 2008, Respondent voluntarily

resigned his employment and refused to repay the remaining balance on the promissory note. (*Id*. at ¶¶ 8-9.)

On October 5, 2009, Petitioner initiated arbitration proceedings with FINRA to collect the balance of the loan, plus interest and attorneys' fees. (*Id*. at ¶ 10.) Respondent filed a counterclaim for breach of contract, negligence, tortious interference with economic advantage, fraud, and violation of the Pennsylvania Wage and Payment Collection Act. (*Id*. at ¶ 11 & Ex. C.) Respondent voluntarily submitted to arbitration as required by the arbitration agreement set forth in his Uniform Application for Securities Industry Registration ("Form U-4"). (*Id*. at ¶ 12 & Ex. B.) An arbitration hearing was held on February 7, February 8, and July 13, 2011. (*Id*. at ¶ 11; Cross Mot. 3.) On September 8, 2011, the arbitration panel (the "Panel") awarded Petitioner $134,204.50 in compensatory damages, $18,018.72 in accrued interest, and $81,758.21 in attorneys' fees. (Pet. ¶ 14 & Ex. C; Cross Mot. 3.) FINRA informed Respondent that the award must be paid "within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. If an award is not paid within 30 days, the responsible party must pay post-judgment interest at the legal rate or as provided in the award by the arbitrator(s)." (Pet. ¶ 22 & Ex. E.) FINRA further specified that the "30-day period ends on: October 10, 2011." (*Id*. at ¶ 23 & Ex. F.)

Respondent's Form U-4 and FINRA Rule 13904(a) provide that FINRA arbitration awards "may be entered as a judgment in any court of competent jurisdiction." (*Id*. at ¶¶ 15, 16 & Exs. B, D.) On November 2, 2011, Petitioner filed the instant Petition and a memorandum in support thereof. (ECF No. 2.) On November 10, 2011, Respondent filed a Cross Motion to Vacate. On December 9, 2011, Petitioner filed a memorandum in opposition to Respondent's Cross Motion. (Pet'r's Mem. Opp'n, ECF No. 9.) On December 11, 2011, Respondent filed a

memorandum in support of his Cross Motion.  (Resp't's Mem. Supp., ECF No. 11.)  On December 21, 2011, Petitioner filed a reply.  (ECF No. 15.)

## II.     Legal Standard

This dispute is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  Under the FAA, agreements to arbitrate are enforceable to the same extent as other contracts, and federal law looks favorably upon the enforcement of arbitration agreements.  *Harris v. Greentree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999).  The Third Circuit has determined that the FAA applies to arbitration provisions contained within Form U-4 agreements.  *Seus v. John Nuveen & Co., Inc.*, 146 F.3d 175, 178-79 (3d Cir. 1998) *overruled on other grounds by Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79 (2000)).  With regard to the enforcement of arbitration awards, the FAA provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.

9 U.S.C. § 9.

Courts apply an "extremely deferential" standard of review to arbitration awards under the FAA.  *Dluhos v. Strasberg*, 321 F.3d 365, 366 (3d Cir. 2003); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995) (observing that where the parties have "agreed to arbitrate . . . the court will set that decision aside only in very unusual circumstances").  The Third Circuit has held that "an award is presumed valid unless it is affirmatively shown to be otherwise, and the validity of an award is subject to attack only on those grounds listed in 9 U.S.C. § 10, or if enforcement of the award is contrary to public policy."  *Brentwood Med.*

*Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005) (footnote omitted). Section 10(a) of the FAA provides that a district court may grant an order vacating an award under the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). The role of the court is not to correct factual or legal errors made by an arbitrator. *Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279 (3d Cir. 2004); *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("[T]he arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award.") (internal quotation omitted). "The Third Circuit has made [it] clear that an award will be vacated only if there is 'absolutely no support at all in the record justifying the arbitrator's determination.'" *Day & Zimmerman, Inc. v. SOC-SMG, Inc.*, No. 11-6008, 2012 WL 5232180, at *5 (E.D. Pa. Oct. 22, 2012) (quoting *United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 379 (3d Cir. 1995)).

The Third Circuit previously recognized a judicially created reason for vacating an award if the award was made in "manifest disregard of the law." *Roadway Package Sys. v. Kayser*, 257 F.3d 287, 291 n.2 (3d Cir. 2001), *abrogated by Hall Street Assocs., LLC, v. Mattel, Inc.*, 552 U.S. 576 (2008). However, it is unclear whether this ground for vacatur survived the Supreme Court's decision in *Hall Street*. *CD & L Realty LLC v. Owens Ill., Inc.*, 535 F. App'x 201, 205

n.3 (3d Cir. 2013); *see also Paul Green Sch. of Rock Music Franchising, LLC v. Smith*, 389 F. App'x 172, 176-77 (3d Cir. 2010) ("In the wake of *Hall Street*, a circuit split has emerged regarding whether manifest disregard of the law remains a valid ground for vacatur. This Court has not yet entered that debate.") (footnote omitted). To the extent that "manifest disregard of law" survives, it applies only in "exceptional cases." *Popkave v. John Hancock Distribs. LLC*, 768 F. Supp. 2d 785, 789-90 (E.D. Pa. 2011). The party seeking to vacate an award must prove "that the arbitrator (1) knew of the relevant legal principle, (2) appreciated that this principle controlled the outcome of the disputed issue, and (3) nonetheless willfully flouted the governing law by refusing to apply it." *Smith*, 389 F. App'x at 177.

### III. DISCUSSION

#### A. The Parties' Contentions

Petitioner argues that Respondent has failed "to set forth a single basis . . . in which this Court can vacate the arbitration award." (Pet'r's Mem. Opp'n 9.) Petitioner seeks confirmation of the Panel's award and interest at the rate of six percent per year from the date the award was entered. (Pet. ¶ 25.) Petitioner also requests attorneys' fees and costs incurred in the opposition of Respondent's Cross Motion to Vacate. (*Id*. at ¶ 26.)

Respondent counters that the Panel's award of attorneys' fees was unreasonable and should be corrected by this court. (Resp't's Mem. Supp. 4.) Respondent does not specify the grounds upon which we should grant his Cross Motion. He does not allege corruption, evident partiality, or misbehavior on the part of the arbitration panel. We must assume therefore, that his argument is based upon either section 10(a)(4) of the FAA, or the judicially created ground of "manifest disregard of law."

### B. Legal Analysis

#### 1. 10 U.S.C. § 10(a)(4)

"To support vacatur under § 10(a)(4) based on the terms of an award, a court must find the terms to be 'completely irrational.'" *Franko v. Ameriprise Fin. Servs., Inc.*, No. 09-09, 2009 WL 1636054, at *3 (E.D. Pa. June 11, 2009) (quoting *Southco, Inc. v. Reell Precision Mfg. Corp.*, 556 F. Supp. 2d 505, 511 (E.D. Pa. 2008)). "For an award to be completely irrational, it is not enough that a court find that the arbitrators erred, but rather it must find that their decision indeed escaped the bounds of rationality." *Southco*, 556 F. Supp. 2d at 511 (internal quotation marks omitted). Moreover, the burden falls upon the party seeking vacatur to establish that there is no support for the award in the record. *Franko*, 2009 WL 1636054, at *5.

Respondent argues that the arbitration panel erred by not making any findings of fact regarding attorneys' fees and by awarding the exact amount requested by Petitioner. (Resp't's Mem. Supp. 3-4.) The Fourth Circuit Court of Appeals addressed this exact issue in *Wells Fargo Advisors, LLC v. Watts*, 540 F. App'x 229 (4th Cir. 2013). In *Watts*, the arbitrators entered an award in favor of the claimant and granted the claimants request for attorneys' fees in the amount of $60,480.25. *Id*. at 230. The district court vacated the award of attorneys' fees "on the ground that the arbitration panel had not articulated any analysis whatsoever to explain the amount of the award." *Id* (internal quotation marks omitted). On appeal, the Fourth Circuit reversed the district court, holding that "arbitration panels are not required to explain their decisions" and that "a court must defer to arbitrators' factual findings on attorneys' fees even if the arbitrators do not explain a basis for the precise amount." *Id*. at 232 (internal quotation marks omitted). The Court further noted that deference is particularly appropriate where the arbitrators awarded

attorneys' fees well below the claimant's request. *Id*.; *see also United States ex rel. Skip Kirchdorfer, Inc. v. Aegis/Zublin Joint Venture*, 869 F. Supp. 387, 393 (E.D. Va. 1994) (noting that the attorneys' fees were presumed to be reasonable and that this presumption was supported by the fact that the arbitrators did not award "the entire attorneys' fees [that the Petitioner] requested in its affidavit, indicating that they independently considered the amount and its reasonableness").

    Contrary to Respondent's argument, the Panel did not award the exact amount of attorneys' fees requested by Petitioner. Rather, the Panel requested that Petitioner submit documentation in support of its request for attorneys' fees. (Pet'r's Mem. Opp'n 6 & Ex. R.) Petitioner submitted a request in the amount of $93,565.21 and attached invoices for services rendered and costs, as well as a breakdown of the work performed by each attorney and their hourly rate. (*Id*. & Exs. S, U.) Petitioner then submitted his objections to the fee request to the Panel. (*Id*. Ex. T.) After considering the parties arguments[1] and the documentation submitted, the Panel determined that a number of hours claimed by Petitioner were excessive, deducted them from the total, and entered an award in the amount of $81,758.21. (Pet. Ex. C.) The Panel was not required to provide any further explanation, and an examination of the record reveals that its decision was well within the bounds of rationality. As in *Watts*, Respondent has failed to carry his burden, and we must defer to the Panel's factual findings.

---

[1] Respondent argued that Petitioner's "request for legal fees was patently unreasonable, including billings by fourteen (14) attorneys and paralegals, largely for purposes of conferring amongst each with respect to an arbitration matter that they argued –in both 'opening' and 'closing' – was a 'simple' case." (Resp't's Mem. Supp. 2.)
    Petitioner countered that "[g]iven Milnes's herculean efforts to divert attention away from his failure to satisfy his contractual obligations to Merrill Lynch, including his last-minute assertions and defenses, Merrill Lynch's request for fees is entirely reasonable and appropriate."

        2.     *Manifest Disregard of Law*

Respondent argues that the Panel disregarded the "manifest legal requirement that an award of attorneys' fees be reasonable." (Resp't's Mem. Supp. 4.)  We disagree.  First, the record reflects that the Panel was made aware of the relevant legal principle at issue in this case.  Citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), Petitioner informed the Panel that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." (Pet'r's Mem. Opp'n Ex. U).  Respondent, who did not provide the Panel with any legal authority, now cites a number of cases in support of his argument that Pennsylvania law allows for court modification of unreasonable fee provisions.  The cases cited by Respondent are easily distinguished.  They do not arise from arbitration and therefore do not address the high level of deference that district courts afford arbitration awards.  *DigiTelCom, Ltd. v. Tele2Sverige AB*, No. 12-3082, 2012 WL 3065345, at *5 (S.D.N.Y July 25, 2012) ("Although Plaintiffs provide authority for the general proposition that courts should scrutinize fee and cost requests, the cases they cite do not arise from arbitration.").  Moreover, because the Panel did not issue a written explanation of its decision, a determination that the Panel acted in disregard of the law is that much more difficult.  *Kulchinsky v. Ameriprise Fin.*, No. 11-0319, 2011 WL 2745967, at *7 (E.D. Pa. July 14, 2011) ("Where an arbitration panel elects not to issue a written explanation . . . 'it is nearly impossible for the court to determine whether the panel acted in disregard of the law.'") (quoting *O.R. Secs., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 747 (11th Cir. 1988)).

---

(Pet'r's Mem. Opp'n 11 & Ex. U.)  Petitioner claimed that "Milnes's antics required Petitioner to incur nearly $95,000 in fees for more than 500 hours of work." (*Id*. at 7.)

8

Second, there is no evidence that the Panel did, in fact, disregard the governing law.  To the contrary, the Panel requested, and Petitioner submitted, records detailing "the time spent by, and hourly rate of, each attorney who worked on the preparation of its affirmative case against Milnes and its defenses to Milnes's counterclaims."  (Pet'r's Mot. Opp'n Ex. U.)  The Panel considered this evidence, determined that a number of hours were excessive, deducted them from the total, and entered an award that it deemed reasonable.  Clearly, Respondent has failed to establish that the Panel's award was in manifest disregard of the law.  We will confirm the Panel's award.  *Popkave*, 768 F. Supp. 2d at 790 ("In the end, as long as there is a barely colorable justification for the arbitrators' decision, [], it is to be upheld.") (internal quotation marks omitted).

### 3. Interest, Attorneys' Fees, and Costs

Petitioner also seeks interest on the Panel's award at the rate of six percent per year from the date the award was entered.  FINRA Rule 13904(j) provides:

> All monetary awards shall be paid within 30 days of receipt unless a motion to vacate has been filed with a court of competent jurisdiction. An award shall bear interest from the date of the award:
> • If not paid within 30 days of receipt;
> • If the award is the subject of a motion to vacate which is denied; or
> • As specified by the panel in the award.
> Interest shall be assessed at the legal rate, if any, then prevailing in the state where the award was rendered, or at a rate set by the arbitrator(s).

FINRA Rule 1309(j).  This precise issue was addressed in *Merrill Lynch, Pierce, Fenner & Smith Inc., v. Schwarzwaelder*, Nos. 11-107, 11-162, 2013 WL 1181569, at *1-2 (W.D. Pa. Mar. 21, 2013).  In that case the court found that the parties "agreed to be bound by the FINRA rules" which "'clearly require[d] that interest on an award be paid from the date of the award when there is a motion to vacate that is denied.'"  *Id*. (quoting *Wachovia Secs., LLC v. Brand*, No. 08-

9

2349, 2010 WL 4366833, at *1 (D.S.C. Oct. 27, 2010)). The court held that because the arbitration panel chose not to set a different rate, Pennsylvania's statutory rate of six percent applied. (*Id*. at 2.) Here, as in *Schwarzwaelder*, the parties agreed to be bound by the FINRA rules. Accordingly, Petitioner will be awarded interest at the rate of six percent, 41 Pa. Cons. Stat. Ann. § 202, from the date of the Panel's award until the entry of judgment in this case and then at the rate established by 28 U.S.C. § 1961.[2]

Petitioner also seeks attorneys' fees and costs incurred in the opposition of Respondent's Cross Motion to Vacate. The promissory note signed by Respondent clearly states that "[i]n the event legal proceedings are required to be brought for collection of any amount under this Promissory Note, [Respondent] promises to pay reasonable attorney's fees." (Pet. ¶ 26 & Ex. A.) Here, Petitioner's request for attorneys' fees was specifically pleaded in his Petition. *See Schwarzwaelder*, 2013 WL 1181569, at * 1 (finding that because the claimant's complaint did not seek attorneys' fees, any right to seek attorneys' fees was waived). Therefore, Petitioner will be awarded reasonable attorneys' fees. Finally, Petitioner is awarded costs incurred in opposing Respondent's Cross Motion. *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party."); *see also Ometto v. ASA Bioenergy Holding A.G.*, No. 12-1328, 2013 WL

---

[2] Section 1961(a) provides in pertinent part that interest:

> [S]hall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment.

28 U.S.C. § 1961(a) (footnote omitted).

174259, at *7 (S.D.N.Y Jan. 9, 2013) (finding that the claimant was entitled to costs where the court granted his motion to confirm the arbitration award).

## IV. CONCLUSION

For the foregoing reasons, Petitioner Merrill Lynch, Pierce, Fenner & Smith Inc.'s Petition to Confirm Arbitration Award and for Entry of Final Judgment will be granted and Respondent James A. Milnes's Cross Motion to Vacate Application/Petition will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**